UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN KEVIN WOODWARD,

Petitioner,

v.

SUPERIOR COURT OF CALIFORNIA, SANTA CLARA COUNTY,

Respondent.

Case No. 25-cv-03045-EKL

**ORDER GRANTING MOTION TO STAY AND ORDER TO SHOW CAUSE**

Re: Dkt. No. 2

Petitioner John Kevin Woodward is facing a third criminal trial for a murder committed in 1992. Woodward has already been tried twice, and both trials "resulted in hung juries with the majority of jurors voting for acquittal." Pet. Att. 2, ECF No. 1-4 ("Dismissal Order"). On August 7, 1996, after the second trial concluded, the presiding judge dismissed the case "based on insufficient evidence." Pet. Att. 1, ECF No. 1-3 ("Min. Order"). In 2022, the Santa Clara County District Attorney refiled the same murder charge against Woodward based on new evidence. *People v. Superior Court*, 100 Cal. App. 5th 679, 686 (2024) ("*Woodward*").[1] Woodward moved to dismiss on double jeopardy grounds. *Id*. The court overseeing the new case granted the motion, concluding that the 1996 dismissal qualified as an acquittal that barred Woodward's retrial. *Id*. The California Court of Appeal reversed, concluding that the 1996 dismissal order was not an acquittal as defined by California law. *Id*. at 687. Both the Supreme Court of California and the Supreme Court of the United States have declined further review of the Court of Appeal's decision. Consequently, Woodward filed a petition for writ of habeas corpus in this Court, arguing that double jeopardy bars another trial under federal law. Pet., ECF No. 1.

---

[1] The facts and procedural history of the state court proceedings are recounted in *Woodward*.

Now before the Court is Woodward's motion to stay the state court proceedings pending resolution of his federal habeas petition. Mot. to Stay, ECF No. 2. The Court carefully reviewed the parties' briefs and relevant authority. For the following reasons, the motion to stay is GRANTED. The Court also ORDERS Respondent to show cause why Woodward's habeas petition should not be granted.

## I.    LEGAL STANDARD

Congress expressly authorized federal courts to stay a state court proceeding related to a pending habeas action: "A justice or judge of the United States before whom a habeas corpus proceeding is pending, may . . . stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding." 28 U.S.C § 2251. The statute does not identify the standard that courts should apply in deciding whether to issue a stay, and neither the parties nor the Court has found guidance on this issue from the Ninth Circuit. *See* Mot. to Stay at 2; Opp. at 4, ECF No. 12. However, the Fourth Circuit has adopted the familiar standard that applies to requests for a preliminary injunction. *Gilliam v. Foster*, 61 F.3d 1070, 1078 (4th Cir. 1995) (en banc). The Court will apply that standard here because both parties invoke it, and it requires an appropriate balancing of constitutional rights and governmental interests.

A party seeking a preliminary injunction must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the government opposes relief, the third and fourth factors merge into one inquiry. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Ninth Circuit applies a "sliding scale approach," under which a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in [the movant's] favor."[2] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). To raise serious questions, the movant's claim must have a

---

[2] The Fourth Circuit applies a similar sliding scale approach. *See Gilliam*, 61 F.3d at 1078.

2

United States District Court
Northern District of California

"fair chance of success on the merits." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Republic of the Philippines v. Marcos*, 862 F.3d 1355, 1362 (9th Cir. 1988) (en banc)).  Under the sliding scale approach, the movant still must show "a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1135.

## II.   DISCUSSION

The Court finds that Woodward is entitled to a stay of state court trial proceedings.  On the current record, Woodward has demonstrated a likelihood of success on the merits of his habeas petition, a likelihood of irreparable injury in the absence of a stay, and that the balance of hardships and the public interest favor a stay.

### A.   Likelihood of Success

Respondent argues that Woodward is not likely to succeed on the merits for two primary reasons.  First, Respondent argues that this Court lacks jurisdiction to hear the habeas petition because Woodward has not exhausted state court remedies.  Second, Respondent argues that Woodward is not likely to establish that the 1996 dismissal order constitutes an acquittal as required for double jeopardy to bar his retrial.  The Court addresses these issues in turn.

#### 1.   Jurisdiction and Exhaustion

Different habeas avenues are available depending on the nature of the petitioner's custody. Here, it is undisputed and clearly established that Woodward is properly proceeding under 28 U.S.C. § 2241 rather than § 2254 because he is subject to pretrial liberty restrictions; he is not "in custody pursuant to the judgment of a State court." *Stow v. Murashige*, 389 F.3d 880, 885 (9th Cir. 2004); *see also Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009) ("[A] habeas petition raising a double jeopardy challenge to a petitioner's pending retrial in state court is properly treated as a petition filed pursuant to 28 U.S.C. § 2241.").

The distinction between habeas actions brought under § 2241 rather than § 2254 is critical for analyzing exhaustion requirements.  Section 2254 expressly provides that a federal court may not grant habeas relief unless "the applicant has exhausted the remedies available in the courts of the State."  This statutory exhaustion requirement is mandatory and jurisdictional.  *See Laing v.*

United States District Court
Northern District of California

*Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).  The exhaustion requirement in a § 2254 action makes sense because the petitioner is "challenging custody attributable to a state court judgment," and that custody bears a presumption of validity that requires federal court deference.  *Dominguez v. Kernan*, 906 F.3d 1127, 1129-30 (9th Cir. 2018).  But where the petitioner is not in custody pursuant to a state court judgment, there is no presumption of validity.  *Id.* at 1129.  Rather, in habeas actions brought under § 2241, any exhaustion requirement is prudential and may be waived in the federal court's discretion.  *Laing*, 370 F.3d at 997-98.

Respondent has not cited any § 2241 habeas action raising double jeopardy that was dismissed for failure to exhaust.  This is not surprising given "the special nature of the double jeopardy right."  *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 303 (1984).  "[A] requirement that a defendant run the entire gamut of state procedures" would vitiate the very protections that the Double Jeopardy Clause provides.  *Id*.  Thus, courts have generally found the prudential exhaustion requirement satisfied if the petitioner has raised double jeopardy in state court unsuccessfully.  *See id*. at 302-03 (finding exhaustion satisfied where double jeopardy claim "was presented to and rejected by" the state supreme court); *see also Phillips v. Court of Common Pleas*, 668 F.3d 804, 811 (6th Cir. 2012) (finding that consideration of a habeas action was appropriate because the petitioner "moved to dismiss the indictment in state court").  Here, Woodward successfully moved to dismiss his criminal case in state court on double jeopardy grounds.  That ruling was reversed on appeal, and both the California Supreme Court and the United States Supreme Court declined further review.  *See* Pet. Att. 9, ECF No. 1-11; *see also Woodward v. California*, 604 U.S. __, 145 S. Ct. 534 (2025) (Sotomayor, J., concurring in cert. denial).  Thus, Woodward has adequately pursued and exhausted state court remedies for his double jeopardy claim.

Respondent argues that Woodward should have pursued further review of the California Court of Appeal's decision.  Opp. at 3.  In effect, Respondent argues that Woodward should have asked the California Supreme Court to overrule its decision in *People v. Hatch*, 22 Cal. 4th 260 (2000), on the grounds that it is inconsistent with federal double jeopardy law.  But there is no reason to require Woodward to run this circuitous path because his § 2241 claim does not require

this Court to decide that California law is inconsistent with federal law. The claim that Woodward brings here is that his retrial is barred by the Double Jeopardy Clause. This "is a question of federal, not state, law" that this Court is empowered to resolve. *McElrath v. Georgia*, 601 U.S. 87, 96 (2024); *see also Mannes v. Gillespie*, 967 F.2d 1310, 1316 (9th Cir. 1992). Accordingly, Woodward has demonstrated that he is likely to succeed against any jurisdictional defects that Respondent has raised.[3]

### 2.     Double Jeopardy

Woodward has shown a likelihood that he will succeed on the merits of his petition – *i.e.*, that his retrial would violate the Double Jeopardy Clause under federal law. "The Fifth Amendment's protection against double jeopardy, made applicable to the States by the Fourteenth Amendment, bars . . . a successive prosecution on the 'same offense' of which a defendant has been previously acquitted or convicted[.]" *Wilson*, 554 F.3d at 828 (citation modified). The Double Jeopardy Clause is motivated by "the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977).

Here, there is no dispute that the State is currently prosecuting Woodward on the same offense for which he was previously placed in jeopardy. It is well established that jeopardy attaches in a jury trial "when the jury is empaneled and sworn" in order "to protect the interest of an accused in retaining a chosen jury." *Crist v. Bretz*, 437 U.S. 28, 35, 38 (1978). Woodward has been tried twice on the same murder charge. A jury was empaneled in each trial; thus, Woodward was placed in jeopardy on the murder charge. Now, the State seeks to try Woodward again on the same murder charge. The only open question is whether there was "a jeopardy terminating event,"

---

[3] Respondent does not invoke any abstention doctrine in opposing a stay. Respondent correctly acknowledges that *Younger* abstention does not apply under these circumstances. Opp. at 4; *see also Mannes*, 967 F.2d at 1312 ("A claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to" *Younger* abstention.); *cf. Gouveia v. Espinda*, 926 F.3d 1102, 1107 (9th Cir. 2019) (holding that the *Rooker-Feldman* doctrine does not apply "to habeas petitions filed under § 2241"). Respondent argues that Woodward should have first sought a stay in state court. Opp. at 4. The cases cited by Respondent do not support or require this stepwise approach. *See Smothers v. Bonta*, No. 24-cv-04784-RFL, 2025 WL 952969, at *2 (N.D. Cal. Mar. 28, 2025) (merely noting that the state court stayed trial proceedings); *Stanley v. Baca*, 137 F. Supp. 3d 1192, 1195 (C.D. Cal. 2015) (discussing denial of a stay *pending appeal*).

United States District Court
Northern District of California

such as an acquittal, after jeopardy attached. *United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005). If Woodward was acquitted, he may not be tried again on the same murder charge.

For purposes of the double jeopardy inquiry, an acquittal is "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans v. Michigan*, 568 U.S. 313, 318 (2013). "[A]n acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was correct or not[.]" *Id.* at 320 (citation modified). This rule "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). By contrast, a dismissal based on the *weight* of the evidence does not raise the same concern and is not treated as an acquittal that bars another trial. *Id.* at 32.

Here, the Court finds greater merit to Woodward's position that the 1996 dismissal order constitutes an acquittal that bars another trial. The minute order entered by the trial court reflects that the case was dismissed "based on insufficient evidence." Min. Order at 1. Consistent with the minute order, the written order also states that the case is "dismissed in the furtherance of justice for insufficiency of the evidence." Dismissal Order at 6. Indeed, the written order references the sufficiency of the evidence *four times*. The following excerpt of the trial court's reasoning is particularly illuminating:

> In this case the prosecution has been given two opportunities to convict the defendant and serve the public interest. In both instances the prosecution has been unable to prove the defendant guilty beyond a reasonable doubt. Both trials have resulted in hung juries, with the majority of jurors voting for acquittal. (First trial eight to four for acquittal, second trial seven to five for acquittal.) A comparison of the first trial and the second trial shows that the prosecution has presented no new evidence pointing to the defendant's guilt and there is no probability that new evidence will become available. Absent new evidence there is no likelihood that a jury would be able to convict the defendant of murder.
>
> The evidence presented by the prosecution lacks the sufficiency needed to find the defendant guilty. While over 300 pieces of evidence were available at both trials and over 30 witnesses were called during each trial, the prosecution was not able to utilize the evidence to prove the defendant guilty beyond a reasonable doubt. The substantive quality of the evidence did not lend itself to proving the prosecution's contentions. This lack of quality meant that the prosecution was limited to very little evidence with which to try its case. With the possible exception of the fingerprints and the defendant's apparent inconsistent statements, the vast majority of the evidence does not point to the defendant's guilt.

Dismissal Order at 3, ECF No. 1-4.  It is evident from this order that the trial court "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *Martin Linen*, 430 U.S. at 572; *see also Evans*, 568 U.S. at 325 ("Here we know the trial court acquitted [petitioner] . . . because it acted on its view that the prosecution had failed to prove its case.").

The dismissal order in this case is similar to the dismissal order in *Mannes*, which the Ninth Circuit held to be an acquittal.  *Mannes*, 967 F.2d at 1316.  The dismissal order in *Mannes* was issued pursuant to the same California state law provision invoked by the trial court in Woodward's case, California Penal Code § 1385.  *Id*. at 1314.  The Ninth Circuit reasoned that, in the context of such a dismissal order, "the phrase 'insufficient evidence' is a term of art" by which the trial court intended to convey "that the evidence presented at trial was not legally sufficient to support a conviction."  *Id*. at 1315.  As in *Mannes*, the trial court's 1996 dismissal order expressly states that dismissal is based on insufficient evidence.  Dismissal Order at 6.  Moreover, the dismissal order cites *Mannes*, indicating that the trial court understood that the phrase "insufficient evidence" would be construed as an acquittal under Ninth Circuit authority.  Dismissal Order at 2.

Respondent's argument – that the dismissal was based on the weight of the evidence – is less persuasive.  First, the dismissal order does not expressly weigh evidence – instead, it addresses the legal sufficiency of the evidence.  Second, the trial court dismissed the case after not one but *two* trials.  Based on the prosecution's repeated failure to obtain a guilty verdict, the trial court concluded that "there is no likelihood that a jury would be able to convict [Woodward] of murder."  Dismissal Order at 3.  This statement corroborates that the trial court's decision rested on the insufficiency of the evidence.  *See Mannes*, 967 F.2d at 1314 (reaching the same conclusion where the trial court held:  "There is no likelihood that a retrial on these charges will result in a unanimous verdict of guilty").  Third, the trial court stated that dismissal would prevent "the prosecution from honing its trial strategies and perfecting its presentation of the evidence through successive attempts at conviction."  Dismissal Order at 5 (citing *Tibbs*, 457 U.S. at 41).  In other words, the trial court intended for the dismissal order to operate as an acquittal.  Although the trial court previously denied a mid-trial motion to dismiss, *see* Opp. at 5, the final dismissal order

United States District Court
Northern District of California

reflects a firm conviction that the case should be dismissed for insufficient evidence.

Because Woodward has persuasively argued that the 1996 dismissal qualifies as an acquittal, he has shown a likelihood of success on his double jeopardy claim. Accordingly, this element favors a stay.

### B.   Likelihood of Irreparable Harm

Woodward has shown a likelihood of irreparable harm. Irreparable harm is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017). When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary. *See Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005).

Here, Woodward faces a quintessential irreparable harm: If the state court proceedings are not stayed, he will suffer the very deprivation of constitutional rights that he seeks to protect through these habeas proceedings. "[T]he right conferred by the Double Jeopardy Clause cannot fully be vindicated by post-conviction relief because it is a prohibition not only of multiple punishments, but also of multiple trials." *Gilliam*, 61 F.3d at 1081. Thus, "a stay of the state criminal proceedings is the only means to protect [his] constitutional right." *Id.* at 1082. Respondent argues that the harm is less in this case because Woodward "is not in jail but is released on bail and house arrest." Opp. at 7. This distinction is immaterial here. The primary harm that Woodward faces arises from the potential deprivation of his right against being placed again in jeopardy for the same offense, not from his continued detention. Thus, this element favors a stay.

### C.   Balance of Hardships and the Public Interest

When a petitioner shows a likelihood that his constitutional rights may be violated, the balance of hardships tips sharply in his favor. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). By contrast, a stay will not likely impose substantial hardships on Respondent because the Court will address the habeas petition expeditiously.

United States District Court
Northern District of California

Respondent notes that some of the witnesses who may be called to testify at a third trial are aging. Opp. at 7. Although this is a legitimate concern, given that many years have already passed, Respondent has not demonstrated that the risk posed by the aging of trial witnesses outweighs the inevitable erosion of Woodward's constitutional rights that would occur if he is subjected to trial before the habeas action is resolved. Thus, the merged third and fourth elements also favor a stay.

**III.   CONCLUSION**

For the foregoing reasons, Petitioner's motion to stay is GRANTED. The Santa Clara County Superior Court is ENJOINED from empaneling a jury and proceeding to trial in *The People of the State of California v. Woodward*, No. C2200594, until this Court issues a final order resolving the habeas action. This Order does not stay pretrial litigation, which may proceed at the discretion of the presiding state court judge.

The Court further ORDERS Respondent to show cause in writing by April 30, 2026, why Woodward's petition should not be granted. *See* 28 U.S.C. § 2243; *see also Wright v. Dickson*, 336 F.2d 878, 881 (9th Cir. 1964) ("Unless a petition for habeas corpus reveals on its face that as a matter of law the petitioner is not entitled to the writ, the writ or an order to show cause must issue."). Woodward shall file a traverse by May 14, 2026. The parties may seek to amend these deadlines by filing a stipulation and proposed order for the Court's consideration.

**IT IS SO ORDERED.**

Dated: March 31, 2026

Eumi K. Lee
United States District Judge

9